IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| ANTONIO JONES,<br><br>　　Plaintiff,<br><br>v.<br><br>CITY GLASS COMPANY,<br><br>　　Defendant. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff, Antonio Jones, by and through undersigned counsel, and files this Complaint for Damages against Defendant City Glass Company. ("Defendant"), and states as follows:

## INTRODUCTION

Plaintiff Antonio Jones ("Plaintiff") brings this action under 42 U.S.C. § 1981 ("Section 1981") to redress an unlawfully racially hostile work environment created and allowed by Defendant.

## JURISDICTION AND VENUE

1.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

2.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391 and 42 U.S.C. §2000(e)-5(f), venue is appropriate in this Court. Venue is proper in this District because the acts of discrimination and retaliation occurred in Defendant's Athens, Georgia facility, located within this District.

## **PARTIES**

3.

Plaintiff is a citizen of the United States of America and is subject to the jurisdiction of this Court.

4.

At all times relevant, Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District. Defendant is now, and at all times relevant hereto has been, a for-profit entity engaged in an industry affecting commerce. During all times relevant hereto,

Defendant employed fisfteen (15) or more employees for the requisite duration under Section 1981.

5.

Defendant may be served with process by delivering a copy of the summons and complaint to its agent for service, Samuel A. Smith, at 408 Pine Ridge Circle, Winterville, GA, 30683.

## **FACTS**

6.

Plaintiff became employed by Defendant as a Glass Worker in October 2020.

7.

Plaintiff is black.

8.

Plaintiff was the only black employee employed by Defendant for the entirety of his employment.

9.

From the beginning of his employment, Plaintiff was subjected to frequent racially harassing comments by his Supervisor, Jared Chambers.

10.

For example, in or about November 2020, just one month after Plaintiff became employed, Chambers and others, including Plaintiff, were watching a safety training video in which the worker in the video died, and Chambers commented "that nigger is dead."

11.

Realizing what had just been said, many of the employees looked at Plaintiff after the comment was made.

12.

Within a few days, Plaintiff complained to Chambers that his language was offensive and inappropriate and that he as a supervisor should not be using that slur.

13.

Chambers told Plaintiff that he understood and mentioned that he had gotten in trouble for using racial language in the workplace before.

14.

However, Chambers only stopped using the slur for a few weeks.

15.

Then, in or about the end of November or the beginning of December 2020, Chambers began to use the word nigger or make racially harassing statements in

front of Plaintiff on average two to three times per week until the end of his employment.

16.

Chambers would also regularly tell Plaintiff that he did not want him performing certain work on a weekly basis because he was black.

17.

The harassment included Chambers using the n-word 17 in front of his girlfriend and the head of the office who was had Administrative and Human Resources duties, Sarah.

18.

Sarah did nothing when Chambers would use the slur in front of her.

19.

Chambers would even say the slur in front of the Owner of Defendant, Sam Smith.

20.

Plaintiff witnessed that Smith did nothing when Chambers used the slur multiple times in the presence of Plaintiff during the course of his employment.

21.

Another example occassion where Chambers used the slur included a work fishing trip in or about November of 2024, while Plaintiff, Chambers, and a Mexican employee named Carlos, were on a boat. On the boat, Chambers used the slur multiple times.

22.

While on the boat, Chambers was also telling Carlos that he needed to go back to his "country" because Carlos was Hispanic and not from America.

23.

When Carlos was being harassed, he began to say he was going to call a lawyer, but Chambers continued to harass him.

24.

Another example of the constant racial harassment Plaintiff was forced to endure occurred on or about January 24, 2025.

25.

On or about January 24, 2025, Plaintiff found a piece of mail in the bathroom and gave it to Chambers.

26.

As Plaintiff was walking away, Chambers called him an "old bathroom paper-reading nigger."

27.

A few weeks prior, Chambers, speaking to Plaintiff, had told him to go pick some cotton after he became mad that Plaintiff had touched some workplace equipment.

28.

In or about February or March 2025, Plaintiff was in the office with Sarah and Chambers present, and Chambers used the slur.

29.

Plaintiff looked at Sarah, expecting her to do something, but she did not.

30.

Plaintiff was also subjected to racial harassment by coworkers Scott Williams and John Goodman.

31.

One such example was one day in or about March 2025, when Williams told Plaintiff he was an "N and an R" and when Plaintiff asked Williams what he meant, Williams said "you know what I mean, you're a nigger."

32.

Goodman also frequently said the slurs nigger and nigga in the presence of Plaintiff and would tell customers that he was trying to get Plaintiff to leave the company.

33.

At least once, a customer complained that Goodman was using the slur in front of Plaintiff, telling Goodman he could not talk to Plaintiff like that.

34.

Goodman and Williams regularly joked about "getting rid of" Plaintiff, the only black employee at the company.

35.

Smith would also himself make racially harassing comments.

36.

For example, throughout Plaintiff's employment, Smith repeatedly called Plaintiff "Brown Sugar" because he was black.

37.

On or about April 7, 2025, Plaintiff was terminated by Chambers.

38.

Chambers told Plaintiff he was being laid off because there was a lack of work.

39.

However, within weeks of his termination, Defendant had hired new employees.

## COUNTS
## COUNT I: HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C. § 1981

40.

Plaintiff re-alleges paragraphs 6-39 as if set forth fully herein.

41.

Defendant subjected Planitiff to unwelcome harassment because of his race.

42.

The harassment Plaintiff was subjected to was severe and pervasive, altered the terms and conditions of his employment, and created a hostile work environment.

43.

Despite Plaintiff's complaints to management, Defendant failed to take prompt or effective remedial action. Instead, Defendant permitted the harassment to continue.

44.

A portion of the harassment that occurred with Defendant's actual or constructive knowledge occurred within the statutory period and the harassment was constant throughout Plaintiff's employment. Plaintiff can thus use instances that occurred more than two years ago to sustain his hostile work environment claim.

45.

Plaintiff was subjected to a hostile work environment because of his race in violation of Section 1981.

46.

Defendant violated Plaintiff's rights under 42 U.S.C. § 1981.

47.

As a direct and proximate result of Defendant's violations of 42 U.S.C. § 1981, Plaintiff has been made the victim of acts that have adversely affected his psychological and physical well-being.

48.

As a direct and proximate result of Defendant's violations of 42 U.S.C. § 1981, Plaintiff has suffered lost wages and emotional distress.

49.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful retaliation.

50.

Defendant acted with malice and in reckless indifference to Plaintiff's federally protected rights. Plaintiff is entitled to punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(A)   Grant Plaintiff a trial by jury as to all triable issues of fact;

(B)   Grant Plaintiff damages for lost wages and benefits and prejudgment interest thereon;

(C)   Grant Plaintiff general damages for mental and emotional suffering caused by Defendant's unlawful conduct;

(D)   Grant declaratory judgment declaring that Plaintiffs' rights have been violated;

(E)   Grant Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(F)   Grant Plaintiff reasonable attorneys' fees and expenses of litigation;

(G)   Grant injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(H)   Award Plaintiff such further and additional relief as may be just and appropriate.

This 30th day of January, 2026.

*/s/ V. Severin Roberts, Esq*
V. Severin Roberts
Georgia Bar No. 940504
Patrick Reid
Georgia Bar No. 888769
The Workers' Firm
(404)-382-9660
severin@theworkersfirm.com
patrick@theworkersfirm.com

*Counsel for Plaintiff*